**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Peter M. Johnson, | ) | |
| | ) | Case No.: 2:16-cv-00670 |
| Plaintiff, | ) | |
| | ) | Judge Edmund A. Sargus, Jr. |
| vs. | ) | |
| | ) | Magistrate Judge Terence P. Kemp |
| | ) | |
| Edison Media Research, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT EDISON MEDIA RESEARCH INC.'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Edison

Media Research, Inc., moves the Court for an order dismissing plaintiff's claims with prejudice.

The reasons supporting this motion are set forth in the accompanying memorandum in support.

Dated: September 12, 2016                    Respectfully submitted,


                                             */s/ Michael K. Farrell*
                                             Michael K. Farrell
                                             Email:   mfarrell@bakerlaw.com
                                             BAKER & HOSTETLER LLP
                                             Key Tower
                                             127 Public Square, Suite 2000
                                             Cleveland, OH  44114-1214
                                             Telephone:   216.621.0200
                                             Facsimile:    216.696.0740

                                             Attorney for Defendant
                                             Edison Media Research, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Peter M. Johnson, ) | Case No.: 2:16-cv-00670 |
| Plaintiff, ) | Judge Edmund A. Sargus, Jr. |
| vs. ) | Magistrate Judge Terence P. Kemp |
| Edison Media Research, Inc., ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT**

I.      Introduction

Plaintiff Peter M. Johnson brings this claim under 42 U.S.C. § 1983, alleging that

defendant Edison Media Research, Inc. violated his First Amendment rights.  The sole basis for

plaintiff's claim is that Edison, a private entity, did not agree to give him certain "unadjusted"

exit-polling data.  As set forth below, plaintiff fails to plead sufficient facts to: (1) show that

Edison is a state actor, (2) state any cognizable First Amendment claim, or (3) satisfy Article III

standing.  Accordingly, plaintiff's complaint must be dismissed.

II.      Factual Background

Plaintiff's complaint alleges that Edison is a New Jersey corporation that, inter alia,

conducts polling as its business. (Compl. ¶ 6; *see also* http://www.edisonresearch.com/election-

polling/.)[1]  Plaintiff alleges that Edison conducted exit polls at various Ohio polling places for

the March 2016 Democratic and Republican presidential primary elections.  (Compl. ¶¶ 6, 9.)

According to the complaint, the results of these exit polls "did not match the actual election

---

[1] Edison does not admit the truth of any of plaintiff's allegations.  But for purposes of this motion only, and without any waiver, the facts alleged in the complaint are assumed to be true.

609616421.2

outcomes when the votes were counted." (*Id*. ¶ 11.)    Plaintiff alleges that after voting was completed, Edison received "detailed records of voter demographics and actual election outcomes" from the State of Ohio. (*Id*. ¶ 13.) Plaintiff further alleges that Edison "adjusted the results of its 'exit polls'" (*id.* ¶ 14), based on actual counted votes and that Edison "regularly provides the Ohio Secretary of State with adjusted results from its 'exit polls.'" (*Id*. ¶ 15.)

The sole alleged basis for plaintiff's claims under 42 U.S.C. § 1983 is "the refusal of [Edison] to provide the plaintiff and people like him with access to its unadjusted 'exit poll' results, because they do not pay subscription fees." (Compl. ¶ 26.) Plaintiff asks the Court to issue an injunction ordering Edison to furnish plaintiff with "its unadjusted results from exit polls taken by the defendant in every Presidential Primary Election during 2016" and to award him attorneys' fees and other relief. (*Id*., prayer.)

III.    Law and Argument

To survive a motion to dismiss, plaintiff "must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Bickerstaff v. Lucarelli*, No. 15-4297, 2016 WL 3923880, at *3 (6th Cir. July 21, 2016).

Although the Court must accept the allegations in the complaint as true, it "need not accept as true any 'conclusory legal allegations that do not include specific facts necessary to establish the cause of action.'" *Id*. at *4 (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011)). Direct or inferential factual allegations satisfying all the elements necessary to sustain recovery under § 1983 must appear in the complaint. *Id*.

Even accepting the allegations in plaintiff's complaint as true, plaintiff falls woefully short of stating a claim for relief, for multiple reasons. First, plaintiff's allegation that Edison is a state actor is a conclusory legal allegation, and the complaint is devoid of any specific facts to

- 3 –

support it.    Second, the First Amendment does not compel private persons to publish information, contrary to plaintiff's theory.    Third, because Edison is not a willing speaker, plaintiff lacks standing to allege any violation of his First Amendment right to receive information from it.    Standing alone, any of one these reasons requires dismissal of plaintiff's complaint.

A.    Plaintiff's Complaint Should Be Dismissed Because Edison Is Not a State Actor.

To obtain relief on his § 1983 claim, plaintiff must demonstrate that Edison, acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution. *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 783 (6th Cir. 2007).  The "under color of state law" requirement typically bars § 1983 claims against private parties acting in their individual capacities.  *Id*.  One relevant exception exists—if the private actor's conduct "is fairly attributable to the state," a plaintiff may then be able to subject that private party to liability under § 1983.  *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007).

Three tests determine whether Edison's actions are attributable to the state: (1) the public-function test, (2) the state-compulsion test, and (3) the symbiotic-relationship or nexus test.  *Campbell*, 509 F.3d at 783.  Plaintiff has not alleged sufficient facts to meet any of these tests.

1.    Plaintiff's Allegations Do Not Satisfy the Public-Function Test.

Under the public-function test, Edison's actions could be attributable to the state only if Edison "exercise[s] powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000).  The Sixth Circuit applies the public-function test narrowly.  *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).  While the public-function test "encompasses . . . state-regulated elections or elections conducted by organizations which in practice produce the uncontested

609616421.2

choice of public officials," it does not transform every activity associated with an election into a public function. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (citation and quotation marks omitted).  Rather, only if the private party has been "assigned an integral part in the election process that is usually performed by the state," does the private party engage in state action. *Libertarian Party of Ohio v. Husted*, No. 16-3537, 2016 WL 4056398, at *9 (6th Cir. July 29, 2016).

Typically, "integral part in the election process" denotes statutorily delegated election authority.  For example, Ohio Rev. Code § 305.02 delegates to county political parties the authority to fill vacancies for county commission, prosecuting attorney, county auditor, and other such elected officials.  For this reason, if a private political party acts pursuant to that delegated power, the Sixth Circuit has suggested that the private party's actions are the actions of the state. *See Federspiel v. Ohio Republican Party State Central Comm.*, 85 F.3d 628, at *2 (6th Cir. 1996) (table); *see also Valenti v. Pa. Democratic State Comm.*, 844 F. Supp. 1015, 1017-18 (M.D. Pa. 1994) (noting that state action is present when "the state ha[s] delegated the running of the primary to political parties").

As another example, a Pennsylvania statute "create[d] the position of poll-watcher and entrust[ed] to the political parties responsibility for that post." *Tiryak v. Jordan*, 472 F. Supp. 822, 824 (E.D. Pa. 1979).  Thus, when a plaintiff alleged that poll-watchers had accosted him at a polling place on election day, the court deemed the poll-watchers' actions to be state actions. *Id.* at 823.  Because the existence of poll-watchers was mandated "by state election law, and . . . one sequela of their conduct [was] to further the purity of an exclusive state concern, i.e., elections, then [poll-watchers'] actions are for § 1983 purposes properly attributable to the state." *Id.* at 824.

609616421.2

By contrast, when a private party takes actions *unrelated* to any authority delegated by the state—actions that any private party may take—those actions do not make the private party a state actor and thus cannot subject it to liability under § 1983, even if those actions may relate in some way to an election. *See Libertarian Party of Ohio*, 2016 WL 4056398, at *9 (filing a protest against a candidate's nomination petition is not state action).

Here, plaintiff has not alleged that Ohio delegated any election duty to Edison that Ohio otherwise would have performed. Indeed, far from delegating authority to conduct exit polling, Ohio, like many other states, often seeks to *curtail* the practice. For example, in 2004, the Ohio Secretary of State prohibited exit polling within 100 feet of the entrance to polling places. *Am. Broad. Co., Inc. v. Blackwell*, 479 F. Supp. 2d 719, 723–24 (S.D. Ohio 2006). A group of news outlets sued, and the court granted their motion for summary judgment, finding that the restriction violated the outlets' First Amendment rights. *Id*. at 741. News organizations have repeatedly sought and obtained similar relief from other restrictions on exit polling. *See, e.g.*, *Daily Herald Co. v. Munro*, 838 F.2d 380, 386 (9th Cir. 1988) (invalidating a Washington statute that prohibited exit polling within 300 feet of polling places).

Moreover, although Edison's complained-of actions occurred during the run-up to an election, plaintiff has pleaded no facts showing that Edison *held* an election or primary or performed any task that was part of the state doing so. Further, plaintiff cites no Ohio statute that requires exit polling, and no such statute exists. In short, plaintiff has pleaded no facts showing that Edison performed any public function.

2. Plaintiff's Allegations Do Not Satisfy the State-Compulsion Test.

Under the state-compulsion test, a private party's actions are the actions of the state when the state exercises "such coercive power or provide[s] such significant encouragement, either

overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Campbell*, 509 F.3d at 784. Mere approval or acquiescence by the state does not suffice. *Id*.

Further, if a private company makes a business decision not required by state law or a state entity, the state did not compel that action. *Id*.; *see also S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 565 (6th Cir. 2007) (finding no state compulsion when the defendant "made a free-will choice" in taking the complained-of action). Indeed, even if the state provides funds and exclusive referrals to a private agency, that agency does not act under state compulsion if "no state employees or agencies influenced the day-to-day activities of the [agency]." *Molnar v. Care House*, 574 F. Supp. 2d 772, 785 (E.D. Mich. 2008).

Here, plaintiff alleges only that Ohio "allows [Edison] to conduct 'exit polls' near polling places" and that it is "aware that [Edison] refuses to provide that plaintiff and people like him with access to its unadjusted 'exit poll' results because they do not pay subscription fees to [Edison]." (Compl. ¶¶ 12, 24.) But under Sixth Circuit law, acquiescence and awareness are not state compulsion. *See Campbell*, 509 F.3d at 784 ("More than mere approval or acquiescence in the initiatives of a private party is necessary to hold the state responsible for those initiatives." (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992))).

Nothing in plaintiff's complaint suggests or alleges that Ohio coerced or even encouraged Edison to conduct exit polls or to charge subscription fees for exit-poll data. Without such allegations, plaintiff has failed to plead facts that satisfy the state-compulsion test.

### 3. Plaintiff's Allegations Do Not Satisfy the Symbiotic-Relationship Test.

The symbiotic-relationship test requires plaintiff to "demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Campbell*, 509 F.3d at 784 (quoting *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003) (en banc)). A sufficiently close

609616421.2

nexus may arise when the private party's activity "is entwined with governmental policies or when government is entwined in [the private party's] management or control." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (quotation marks omitted). If, however, the challenged actions occur without any involvement by the state, there is no state action under this test. *Campbell*, 509 F.3d at 784 (finding no state action when the private entity's challenged actions "occurred without any involvement whatsoever by any government entity or regulation"). And while a contractual relationship between a private party and the state could support a showing of a symbiotic relationship, an agreement to provide and receive a one-time service does not elevate the private entity into a state actor under the symbiotic-relationship test. *See S.H.A.R.K.*, 499 F.3d at 565.

Plaintiff does not allege that Ohio had any influence or involvement in Edison's decision to conduct exit polls or to charge subscription fees, or in its conducting that polling or compiling the unadjusted results he seeks. (*See* Compl. ¶ 24.) Plaintiff does not allege that Ohio controls Edison or its conduct, but only that Ohio is "aware" of it. (*Id.*) And plaintiff fails to allege *any* relationship—even a one-off contractual one—between Edison and Ohio.

The allegations in plaintiff's complaint do not satisfy any of the tests above. Although plaintiff baldly alleges that Edison's conduct is state action, he pleads no "specific facts necessary" to support that legal conclusion. *Bickerstaff*, 2016 WL 3923880, at *4. Plaintiff therefore failed to plead a necessary element of a cause of action under § 1983 and his complaint must be dismissed.

B. Plaintiff Has Failed to Plead Any Cognizable First Amendment Violation.

Plaintiff alleges that "'[e]xit polls' are speech protected by the First Amendment to the United States Constitution because: (a) the information gathered and disseminated in 'exit polls' goes to the heart of the democratic process, (b) the process of obtaining the information in 'exit

polls' requires a significant discussion between pollster and voter, and (c) 'exit polls' provide a valued source of reliable data about voter behavior." (Compl. ¶ 22.) According to plaintiff, Edison "unreasonably obstruct[ed], impede[d], and interfere[d]" with his free-speech rights by refusing to provide him with the "unadjusted" exit-poll results. (Compl. ¶ 26.) But because Edison has no constitutional (or other) duty to publish this information to plaintiff, and plaintiff has no constitutional right to receive it, plaintiff has not stated a cognizable First Amendment claim.

### 1. Edison Has No Constitutional Duty to Publish.

Edison has no constitutional duty to publish information, to plaintiff or anyone else.[2] As the Supreme Court has held, news organizations cannot be compelled to publish. *Miami Herald v. Tornillo*, 418 U.S. 241, 258 (1974); *see also Raimondo v. Vill. of Armada*, 197 F. Supp. 2d 833, 842 (E.D. Mich. 2002) (noting that news organizations may not be compelled "to publish anything nor are citizens required to say anything"). As such, courts routinely strike down statutes forcing private actors to publish certain information. *See, e.g.*, *Miami Herald*, 418 U.S. at 258 (finding that a Florida statute giving candidates a right to reply to press criticism was unconstitutional). And plaintiffs cannot compel publication of information through the federal courts. *See, e.g.*, *Groswirt v. Columbus Dispatch*, 238 F.3d 421, at *2 (6th Cir. 2000) (table) ("[A] federal court cannot compel a newspaper to print an article submitted by a citizen."); *Machleder v. Diaz*, 801 F.2d 46, 55 (2d Cir. 1986) ("A court cannot substitute its judgment for that of the press by requiring the press to present an article or broadcast in what the court believes is a balanced manner."); *Bell v. Tennessee*, No. 1:11-cv-14, 2012 WL 996560, at *9 (E.D. Tenn. Mar. 22, 2012) (finding that plaintiff had no constitutional right to force a private

---

[2] Although plaintiff alleges that Edison obstructed, impeded, and interfered with his free exercise of speech, this is not a freedom-of-expression claim. Plaintiff never alleges that a state actor prohibited or impeded *his own* speech, but instead demands access to or publication of Edison's speech. *See S.H.A.R.K.*, 499 F.3d at 559.

609616421.2

entity to publish his documentary); *Amiri v. WUSA TV-Channel Nine*, 751 F. Supp. 211, 212 (D.D.C. 1990) (television station's "right to decide what news it broadcasts is indisputable"). Even when publication could serve a public good, such as the "interest in providing voters with additional relevant information," a private actor cannot be compelled to publish. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995).

Johnson's allegation that Edison violated his First Amendment rights by refusing to give him "unadjusted" exit-poll data fails to state a claim for relief because Edison has no duty to publish information. In fact, were the Court to issue the injunction that plaintiff seeks, such a ruling would impinge on Edison's own rights to choose what to publish. *See Novotny v. Tripp Cty.*, 664 F.3d 1173, 1177 (8th Cir. 2011) (requiring a newspaper to publish a letter to the editor would "infringe upon the right of the newspaper itself to decide what content it includes on its own editorial page"). Edison's refusal to publish information or to provide any particular information to plaintiff does not give plaintiff a cause of action under the First Amendment.

2.      Plaintiff Has No Constitutional Right to Receive Information from Edison.

To the extent plaintiff's claim rests on his right to receive information, it fails as a matter of law. Although the Supreme Court recognizes a right to receive information, that right "is not established in every case where a person wishes to receive information." *Gregg v. Barrett*, 771 F.2d 539, 547 (D.C. Cir. 1985). That is, plaintiff's right to receive information does not compel others—private persons or governments—to supply information. *United States v. Miami Univ.*, 91 F. Supp. 2d 1132, 1154 (S.D. Ohio 2000). Instead, the right to access or receive information bars the government from selectively blockading access to information, *S.H.A.R.K.*, 499 F.3d at 560, or from impermissibly silencing a willing speaker. *Martin v. U.S. E.P.A.*, 271 F. Supp. 2d 38, 48 (D.D.C. 2002).

609616421.2

The Constitution imposes no duty on Edison to publish any or all exit-poll data, *see Miami Herald*, 418 U.S. at 258, and affords plaintiff no right to demand it, *see Miami Univ.*, 91 F. Supp. 2d at 1154. Plaintiff therefore fails to state a cognizable constitutional claim by accusing Edison of obstructing, impeding, and interfering with his First Amendment rights.

C.      Plaintiff Lacks Article III Standing.

Finally, plaintiff lacks Article III standing to assert this claim against Edison. Plaintiff bears the burden of showing standing—"an injury in fact that is fairly traceable to the challenged action of the defendant and is capable of being redressed by the court." *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (citation and quotation marks omitted).

Plaintiff's right to obtain information is not as broad as the right of free speech from which it stems. *Martin v. U.S. E.P.A.*, 271 F. Supp. 2d 38, 48 (D.D.C. 2002). In fact, plaintiff's rights are "derivative of the rights of the speaker," and his standing to challenge a restriction on his right to receive information requires "the existence of a willing speaker." *Price v. Saugerties Cent. Sch. Dist.*, No. 1:06-CV-1420, 2007 WL 2693826, at *2 (N.D.N.Y. Sept. 12, 2007); *Hardy v. Hamburg*, 69 F. Supp. 3d 1, 9 (D.D.C. 2014) ("An allegedly aggrieved listener, who wishes to receive information but for a government regulation, must be able to identify a 'willing speaker.'"). Without a willing speaker, plaintiff cannot show he suffered any injury from a restriction on his receipt of information. *See Price*, 2007 WL 2693826, at *2; *see also FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838-39 (3d Cir. 1996) ("[T]hird parties have standing to challenge a gag order only when there is reason to believe that the individual subject to the gag order is willing to speak and is being restrained from doing so."). And without an injury, plaintiff lacks standing. *See McKay*, 823 F.3d at 867.

Here, plaintiff has not demonstrated that there is a willing speaker whose speech is restricted. In fact, plaintiff's complaint affirmatively pleads that Edison is *not* a willing speaker.

- 11 –

(Compl. ¶¶ 23, 24, 26, 27, 28.) Nor has plaintiff identified any government restriction or restraint that prevents him from receiving speech from a willing speaker. In short, he alleges no injury, thereby falling short of his burden to show he has a personal stake in this controversy that warrants his invocation of federal-court jurisdiction under Article III. *McKay*, 823 F.3d at 867.

## Conclusion

Plaintiff's complaint is facially deficient in three respects. First, he fails to plead any facts showing that Edison is a state actor, a necessary element of his § 1983 claim. Second, his First Amendment claim presupposes that Edison, a private party, has a constitutional duty to publish particular exit-poll data or that plaintiff has a constitutional right to receive it. The First Amendment imposes no such duty and recognizes no such right. Finally, his failure to identify a willing speaker unlawfully restricted from disseminating information reveals that he has suffered no injury and therefore lacks standing. For all these reasons, the Court should dismiss plaintiff's complaint with prejudice and award Edison its attorneys' fees and expenses incurred herein.

Dated: September 12, 2016

Respectfully submitted,

*/s/ Michael K. Farrell*
Michael K. Farrell
Email:   mfarrell@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Telephone:   216.621.0200
Facsimile:   216.696.0740

Attorney for Defendant
Edison Media Research, Inc.

609616421.2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Dismiss was served on this 12th

day of September 2016 via the Court's CM/ECF system to all counsel of record.

/s/ Michael K. Farrell<br>Attorney for Edison Media Research, Inc.

609616421.2