**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Peter M. Johnson, | Case No.: 2:16-cv-00670 |
| Plaintiff, | Judge Edmund A. Sargus, Jr. |
| vs. | Magistrate Judge Terence P. Kemp |
| Edison Media Research, Inc., | **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| Defendant. | |

## Introduction

Nothing in plaintiff's opposition brief changes the fact that his § 1983 claim is facially deficient and should be dismissed for several separate and independent reasons. First, plaintiff has failed to plead any facts that could render Edison a state actor under 42 U.S.C. § 1983. Plaintiff alleges only that Ohio is aware of and acquiesces in Edison's conduct. But even if that allegation is accepted as true for the purposes of this motion,[1] the Sixth Circuit has repeatedly held that such allegations are insufficient to deem a private party a state actor and this Court need go no further to grant Edison's motion and dismiss this case. Second, plaintiff ignores the fact that the relief he seeks would force Edison—a private party—to speak by providing him with information against its will. Such a result would be contrary to well-settled Supreme Court and Sixth Circuit precedent. Third, plaintiff has no constitutional right of "access" to a private party's information, and his citations to cases challenging *government* restrictions on access to criminal trials, public forums or information held by the government are wholly inapposite. Finally, plaintiff lacks standing because he has not alleged any legally cognizable harm. For any

---

[1] Plaintiff's factual allegations will be assumed as true for purposes of this motion only, without any waiver by defendant Edison of the opportunity to plead and provide evidence otherwise at later stages of this case, should there be any.

or all of these reasons, the Court should dismiss plaintiff's complaint with prejudice and deny his meritless request for sanctions.

**Law and Argument**

I.  Edison Is Not a State Actor.

Plaintiff has failed to plead any specific facts showing that Edison's challenged conduct is "fairly attributable to the state" such that Edison could be deemed a state actor. *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007).

Plaintiff concedes that he has not pleaded facts sufficient to meet the public-function or state-compulsion tests, but argues that he has pleaded facts from which Edison could be deemed a state actor under the nexus test. In support of this notion, plaintiff cites the following allegations: Ohio provides public voter records and election outcomes to Edison (as it does to the entire public), Edison provides Ohio with "adjusted" exit-poll results, and Ohio is aware of and acquiesces in Edison's refusal to share unadjusted exit-poll results with plaintiff. (ECF No. 6 at 8-9, ID 40-41.) These allegations are insufficient as a matter of law to show that Edison is a state actor.

It is not sufficient to allege generally that Edison and Ohio have some relationship, or even a close relationship. To satisfy the nexus test, the complaint must allege that "the State is responsible for the specific conduct of which plaintiff complains." *Paige v. Coyner*, 614 F.3d 273, 279 (6th Cir. 2010) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (emphasis omitted). Thus, the issue is whether "the action that allegedly deprived the [plaintiff] of [his] constitutional rights . . . could be attributed to the state." *Id.*; *see also Marie v. Am. Red Cross*, 771 F.3d 344, 363 (6th Cir. 2014) ("[I]t is important to note that this test evaluates whether there is a sufficiently close nexus between the state and *the challenged action*." (citation and quotation marks omitted)); *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 784 (6th Cir. 2007)

(finding no nexus when the "challenged actions . . . occurred without any involvement whatsoever by any government entity or regulation").

Here, the only challenged *action* is Edison's refusal to give plaintiff unadjusted exit-poll data. Plaintiff does not allege any nexus between Ohio and Edison's decision not to give him the data. He does not allege that the state was responsible for, required, caused or played any role in Edison's decision. To the contrary, plaintiff alleges only that the state was aware of and acquiesced in Edison's action. Significantly, plaintiff alleges no specific facts explaining how the state was aware of or how it acquiesced in Edison's decision. (Compl. ¶¶ 24-26; ECF No. 6 at 8-9, ID 40-41.) Such conclusory allegations, unsupported by specific factual claims, fall far short of meeting plaintiff's burden. *See, e.g.*, *Campbell*, 509 F.3d at 784 (finding no state action under the nexus test when the "government entities here did no more than authorize and approve a contract").

Plaintiff's *brief* also argues that state regulation of Edison's conduct somehow transforms Edison into a state actor. (ECF No. 6 at 8, ID 40.) Plaintiff's *complaint*, however, does not allege that Ohio regulates exit polling in general, but states only that Ohio "allows" such polling. (Compl. ¶ 12.) Again, the Sixth Circuit has expressly found that mere allegations of acquiescence are insufficient to establish state action. *See Campbell*, 509 F.3d at 784; *see also Bowersock v. City of Lima*, No. 3:07-cv-730, 2008 WL 1767083, at *3 (N.D. Ohio Apr. 16, 2008).

And, even were the Court to construe the complaint as alleging state regulation of exit polling (which it doesn't), that would still be insufficient to establish a close nexus between Edison and Ohio. *See Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) ("[I]t is now well-established that state regulation, even when extensive, is not sufficient to justify a

finding of a close nexus between the state and the regulated entity."). Indeed, plaintiff's complaint does not allege that any state regulation required the only action he challenges—Edison's decision not to give him unadjusted polling data.

In short, plaintiff has pleaded no specific facts to support his allegation that Edison is a state actor. *See Bickerstaff v. Lucarelli*, No. 15-4297, 2016 WL 3923880, at \*5 (6th Cir. July 21, 2016). Because state action is an essential element of his § 1983 claim, the Court need go no further and plaintiff's complaint must be dismissed.

II. <u>Plaintiff's Requested Relief Would Force Edison to Speak, a Result the Supreme Court Has Repeatedly Prohibited</u>.

Faced with *Miami Herald v. Tornillo*, 418 U.S. 241 (1974) and its progeny, which make clear that private citizens cannot be compelled to speak, i.e., to provide information, against their will, plaintiff attempts to cast his claim as one for "access." But whatever label plaintiff may put on his theory of recovery, the relief he requests is forced publication: he asks that the Court "[i]ssue a mandatory injunction ordering defendant Edison Media Research, Inc. to give plaintiff immediate access to its unadjusted results from exit polls taken by the defendant in every Presidential Primary Election during 2016." (Compl. prayer.)

For decades, the Supreme Court has consistently refused to honor any "express or implied command" that the press or other private parties publish what they would prefer to withhold. *Miami Herald*, 418 U.S. at 254 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995) ("The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit."). Time and time again, courts have rejected attempts to make private companies publish information. *See, e.g.*, *Groswirt v. Columbus Dispatch*, 238 F.3d 421, at \*2 (6th Cir. 2000) (table) ("[A] federal

court cannot compel a newspaper to print an article submitted by a citizen."); *Machleder v. Diaz*, 801 F.2d 46, 55 (2d Cir. 1986) ("A court cannot substitute its judgment for that of the press by requiring the press to present an article or broadcast in what the court believes is a balanced manner."). Plaintiff's requested injunction "would infringe upon the right of [Edison] to decide" what to publish. *Novotny v. Tripp Cty.*, 664 F.3d 1173, 1177 (8th Cir. 2011).

Plaintiff cannot force Edison to publish or speak when Edison would remain silent. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (finding that the First Amendment protects "both the right to speak freely and the right to refrain from speaking at all"). (ECF No. 4 at 9-11, ID 26-28.) For this separate and independent reason, plaintiff's First Amendment claim fails.

III.    Plaintiff Has No Right of "Access" to Edison's Information.

Plaintiff also argues that he somehow has a right of "access" to Edison's information. But this right applies only when the government denies access to a proceeding or information, and plaintiff simply has not alleged that the government blocked him from obtaining information from Edison. For this reason, plaintiff's reliance on cases examining governmental restrictions on access to trials or deportation hearings, what constitutes a public forum, or whether the public has a right to obtain information in government hands is wholly misplaced. Not surprisingly, not a single case plaintiff cites holds that a private entity such as Edison can be forced to give another private party "access" to information it has compiled through its own efforts free of charge. Indeed, as cited in plaintiff's own brief, the First Amendment "prohibit[s the] *government* from limiting the stock of information from which members of the public may draw"—it does not compel private parties to speak. (ECF No. 6 at 11, ID 43 (quoting *First Nat'l Bank of Boston v. Belotti*, 435 U.S. 765, 783 (1978)).) As the cases cited above make clear, Edison has a First Amendment right to share all the exit-polling data it compiled, and a corresponding right to choose to share none.

Similarly unavailing is plaintiff's claim that he is somehow entitled to Edison's data because areas near polling places are traditionally open to the public and exit polling is speech "on matters of public importance that are fundamental to self-government." (ECF No. 6 at 11, ID 43.) While it is true that Edison, plaintiff, and others are entitled to use areas in the vicinity of polling places "for expressive purposes, including random interviews," free from *government* interference, that in no way suggests that Edison can be compelled to share the results of its First Amendment activities with plaintiff, or that plaintiff could be forced to share the results of his conversations with others with Edison. *Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988).

Plaintiff's access claim boils down to his belief that he has the right to compel Edison, a private party, to supply him with information that it compiled. The First Amendment does not recognize this right. *United States v. Miami Univ.*, 91 F. Supp. 2d 1132, 1154 (S.D. Ohio 2000), *aff'd* 294 F.3d 797 (6th Cir. 2002). The "First Amendment does not regulate the conduct of private parties." *Hammer v. Amazon.com*, 392 F. Supp. 2d 423, 432 (E.D.N.Y. 2005). And as explained above, any order compelling Edison to supply plaintiff with the requested information would infringe on Edison's own right to choose what to publish. *See Groswirt*, 238 F.3d at *2; see also Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 650 (1985) ("[I]n some instances compulsion to speak may be as violative of the First Amendment as prohibitions on speech."); *DeBoer v. Vill. of Oak Park*, 267 F.3d 558, 572 (7th Cir. 2001) ("[T]he one who chooses to speak also chooses what to say.").

IV. <u>Plaintiff Lacks Standing</u>.

Plaintiff bears the burden of showing standing—"an injury in fact that is fairly traceable to the challenged action of the defendant and is capable of being redressed by the court." *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (citation and quotation marks omitted).

Plaintiff has no First Amendment right to access information Edison possesses on demand, and his right to receive information depends upon the existence of a willing speaker. *Martin v. U.S. E.P.A.*, 271 F. Supp. 2d 38, 48 (D.D.C. 2002); *see also Hardy v. Hamburg*, 69 F. Supp. 3d 1, 9 (D.D.C. 2014) ("An allegedly aggrieved listener, who wishes to receive information but for a government regulation, must be able to identify a 'willing speaker.'").

Plaintiff argues that Edison is a willing speaker because it "make[s] [exit poll] data available to subscribers." (ECF No. 6 at 14, ID 46.) Edison does provide certain exit poll data to *subscribers,* such as news organizations, who meet certain criteria and pay subscription fees. But as plaintiff repeatedly pleaded in his complaint, Edison declined to provide plaintiff with the data he sought. (Compl. ¶¶ 23, 24, 26, 27, 28.) Without a willing speaker, plaintiff cannot show he suffered any injury from an alleged restriction on his receipt of information. *See Price v. Saugerties Cent. Sch. Dist.*, No. 1:06-CV-1420, 2007 WL 2693826, at *2 (N.D.N.Y. Sept. 12, 2007); *see also FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838-39 (3d Cir. 1996) ("[T]hird parties have standing to challenge a gag order only when there is reason to believe that the individual subject to the gag order is willing to speak and is being restrained from doing so."). And without an injury, plaintiff lacks standing. *See McKay*, 823 F.3d at 867.

V.  <u>Plaintiff's Request for Sanctions Is Meritless and Should Be Denied.</u>

Finally, plaintiff requests sanctions against Edison, alleging that Edison's own request for sanctions was "frivolous." (ECF No. 6 at 16, ID 48.) Plaintiff also claims that Edison failed to give him 21 days to withdraw his complaint before moving for sanctions, as required by Rule 11 of the Federal Rules of Civil Procedure. (*Id.*)

Edison did not move for sanctions against plaintiff. Rather, the conclusion in Edison's moving papers simply asked the Court to "dismiss plaintiff's complaint with prejudice and award Edison its attorneys' fees and expenses incurred herein." (ECF No. 4 at 12, ID 29.) Edison did

this, inter alia, because if the Court dismisses the complaint, Edison would be a "prevailing party" potentially entitled to attorney's fees. 42 U.S.C. § 1988 ("the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee"); *see also Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 635 (6th Cir. 2009). Plaintiff's request for sanctions relates to a motion never made and should be rejected out of hand.

## **Conclusion**

Plaintiff's First Amendment claim falls short at every turn. He failed to plead that Edison is a state actor, and the First Amendment does not regulate the conduct of private parties. His requested remedy—forced speech from a private party—is unconstitutional. He has no constitutional right of access to Edison's information and no standing to challenge the decision of a private entity, Edison, not to give him data that it compiled. For the reasons set forth above and in Edison's initial moving papers, the Court should dismiss the complaint with prejudice and deny plaintiff's request for sanctions.

Dated: October 7, 2016

Respectfully submitted,

*/s/ Michael K. Farrell*
Michael K. Farrell
Email:  mfarrell@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Telephone:  216.621.0200
Facsimile:  216.696.0740

Attorney for Defendant
Edison Media Research, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Reply in Support of Defendant Edison Media Research Inc.'s Motion to Dismiss was served on this 7th day of October 2016 via the Court's CM/ECF system to all counsel of record.

                                                  */s/ Michael K. Farrell*
                                                  Attorney for Edison Media Research, Inc.