# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PETER M. JOHNSON,**

    **Plaintiff,**

v.

**EDISON MEDIA RESEARCH, INC.,**

    **Defendant.**

Case No. 2:16-cv-670
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss. (ECF No. 18.) For the following reasons, Defendant's Motion is **GRANTED**.

### I. Background

On March 15, 2016, Plaintiff Peter M. Johnson voted in the presidential primary election at his local precinct in the City of Columbus, Ohio. (Complaint ("Compl.") ¶ 1, ECF No. 1.) The Defendant, Edison Media Research ("Edison"), is a New Jersey polling corporation, which conducted exit polls during the primary election at various polling stations throughout Ohio in order to represent the election results for the State of Ohio as a whole. (*Id.* ¶¶ 6-9.) Plaintiff brings this action under 42 U.S.C. § 1983 asserting that Edison violated his First Amendment rights by refusing to share with him its unadjusted polling data.

Edison conducted the exit polls by interviewing voters after their ballot was cast about who they voted for, particular issues important to that voter, and demographic information. (*Id.* ¶ 10.) Participation in the exit polling was voluntary and anonymous. Plaintiff does not state whether or not he participated in such an exit poll on the primary election day at issue.

Plaintiff alleges that the result of the exit polls Edison conducted in Ohio on March

15, 2016 did not match the actual election outcomes when the votes were counted. (*Id.* ¶ 11.) Thereafter, according to Plaintiff, the State of Ohio provided "detailed records of voter demographics and actual election outcomes" to Edison after the votes were counted, which Edison used to adjust the results of its exit poll to match. (*Id.* ¶ 13–14.) Plaintiff requested access to the initial exit polling data Edison acquired before it was adjusted for demographic and actual election outcomes. Edison denied Plaintiff's request, explaining that the unadjusted results are only available to subscribing news organizations that comprise the National Election Pool, which include ABC, CBS, CNN, Fox, NBC, and the Associated Press. (Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") at 3, ECF No. 6; Compl. ¶ 23.)

Plaintiff filed this claim against Edison Media Research under § 1983 alleging that Edison violated his First Amendment speech rights by refusing to provide him access to its unadjusted data without a subscription fee. (*Id.* ¶ 2.) Defendant has filed a motion to dismiss for failure to state a claim for relief (ECF No. 4), which is now before the Court for consideration.

## II.     Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Such an action will be dismissed where "there is no law to support the claims made" or where "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this standard, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face."

2

*Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all of the complaint's well-pleaded factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

### III. Analysis

Plaintiff argues that exit polls are protected speech under the First Amendment of the United States Constitution, and that Edison is violating his rights by refusing to provide him with the unadjusted exit polling data without a subscription fee. (Pl. Opp. at 10 (citing *The Daily Herald Co. v Munro*, 838 F.2d 380, 384 (9th Cir. 1988).) He asserts that exit polls are protected speech because "the information gathered and disseminated in 'exit polls' goes to the heart of the democratic process," and because "'exit polls' provide a valued source of reliable data about voter behavior." (Pl. Opp. at 5.) However, Defendant correctly asserts that even assuming exit polls are protected speech, Plaintiff's claim still fails because he has not alleged sufficient facts to establish that Edison is a state actor.

#### A. 42 U.S.C. § 1983 Close Nexus Test

To maintain a claim under 42 U.S.C. § 1983, a plaintiff must show "(1) the deprivation of

3

a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." *Savoie v. Martin*, 673 F.3d 488, 493–94 (6th Cir. 2012) (quoting *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). Thus under the second prong, a plaintiff must prove that the Defendant's conduct amounted to state action. "[A] private entity acting on its own cannot deprive a citizen of First Amendment rights." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). Nevertheless, a private actor may be considered to be "acting under color of state law" if the private actor's conduct "is fairly attributable to the state." *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007).

The Supreme Court has developed three tests for determining whether state action exists: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). Here, the parties only dispute whether Edison meets the third test. Under the symbiotic or nexus test, a private actor's conduct will be attributable to the state if there is "close nexus between the State and the challenged action" (i.e. through state regulation or contract), so that seemingly private behavior "may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974); *see also Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995).

> [N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.
>
> Our cases have identified a host of facts that can bear on the fairness of such an attribution. We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," when the State provides "significant encouragement, either overt or covert," or when a private actor operates as a "willful participant in joint activity with the State or its agents[.]" We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," when it has been delegated a public function by the State, when it is "entwined with governmental policies," or when government is "entwined in [its] management or control[.]"

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001) (internal

4

citations omitted). However, "utilization of public services by private actors does not convert private action to state action." *Lansing*, 202 F.3d at 831 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 53 (1999)). Additionally, "state regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity." *Id.* at 830 (citing *Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982)). Rather, "[t]he close nexus test requires something more. Where a § 1983 litigant challenges private conduct, the state must have 'intimately involved' itself in that conduct in such a way as to render it conduct 'under color of' law." *Redmond v. The Jockey Club*, 244 F. App'x 663, 677 (6th Cir. 2007). Thus, if there is not significant involvement by the state, the action must be dismissed.

Here, Plaintiff has failed to allege facts sufficient to establish that Edison is a state actor. Plaintiff argues that "there is a close nexus between [Edison] and the Ohio Secretary of State, such that [Edison's] conduct may fairly be treated as action under color of state law." (Pl. Opp. at 1; Compl. ¶ 25.) According to Plaintiff, the Ohio Secretary of State "regularly provides [Edison] with detailed records of voter demographics and actual election outcomes after the votes are counted, and allows [Edison] to conduct 'exit polls' near polling places," as it did for the Presidential Primary Elections in March 2016. (Compl. ¶¶ 12–13.) In turn, Edison provides the adjusted results of its exit polls to the Ohio Secretary of State. (*Id.* ¶¶ 13–15.) Additionally, the Ohio Secretary of State "[is] aware that [Edison] refused to provide the plaintiff and people like him with access to its unadjusted 'exit poll' results because they do not pay subscription fees . . . ." (*Id.* ¶ 24.) From these actions, Plaintiff concludes that the State of Ohio regulates Edison's exit polling and that a close relationship between the two exists, thereby transforming Edison into a state actor.

Despite Plaintiff's assertion that these connections satisfy the close nexus threshold, the

5

Court finds they fall short. The Ohio Secretary of State's "awareness" of Edison's policies and its publication of "voter demographics and actual election outcomes" hardly amounts to coercive power, significant encouragement, or control by the State over Edison. Plaintiff also does not cite to any Ohio statute or regulation related to exit polling. The fact that the State simply permits Edison to conduct exit polls does not rise to the level of state regulation required to satisfy the close nexus test. (*Id.* ¶¶ 12, 24.) As Defendant argues,

> Plaintiff does not allege that Ohio had any influence or involvement in Edison's decision to conduct exit polls or to charge subscription fees, or in its conducting that polling or compiling the unadjusted results he seeks. (*See* Compl. ¶ 24.) Plaintiff does not allege that Ohio controls Edison or its conduct, but only that Ohio is "aware" of it. (*Id.*) And plaintiff fails to allege any relationship—even a one-off contractual one—between Edison and Ohio.

(Defendant's Motion to Dismiss ("Def. Mot.") at 8, ECF No. 4.) The Court agrees that Plaintiff has not alleged sufficient facts to support that Edison and the Ohio Secretary of State are otherwise intertwined in any on-going or even singular relationship. Rather, Edison is a private corporation that merely utilized public demographic information made available by the State of Ohio.

This result is supported by other cases in which a close nexus between a private actor and the government was lacking. *See, e.g., Am. Mfrs.*, 526 U.S. at 54 (holding that "a private party's mere use of the State's dispute resolution machinery, without the 'overt, significant assistance of state officials'" cannot properly be considered state action"); *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 784 (6th Cir. 2007) (finding absence of close nexus between food plant and the government where government "did nothing more than authorize and approve a contract that provided tax benefits conditioned on PMI opening" a new plant); *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 565 (6th Cir. 2007) (holding that a one-time contractual relationship where private organization provided training to public park rangers was

"far from 'a complete entwinement of a private entity with a public entity'").

Moreover, this case is distinguishable from that of *American Broadcasting Companies, Inc. v. Wells*, 669 F. Supp. 2d 483 (D. N.J. 2009), cited by Plaintiff, in which the court held that a New Jersey Supreme Court decision prohibiting all expressive activities within 100 feet of a polling place was misplaced with respect to exit polling because it was not related to the government's interest in securing the right to vote. However, this conclusion was premised on the fact that the news media plaintiffs had a First Amendment right to report news gathered in a public forum, and that the entity restricting the plaintiffs' speech was the State. *Id.* at 487 ("A constitutional review of a *state regulation* governing speech will depend on whether the speech occurs in a traditional public forum, and then subsequently whether the statute is content-based or content-neutral." (emphasis added)). In contrast, the Plaintiff here is not seeking to conduct exit polling in a public forum and the State is not prohibiting him from obtaining the requested information. Rather, he is looking to gather information from a private entity, which the private entity does not wish to disclose.

Because Plaintiff has failed to plead that Edison was acting under the color of state law, he cannot state a claim for a relief under § 1983 and therefore his claim must be dismissed.

B. 42 U.S.C. § 1988(b)

In addition to the dismissal of Plaintiff's claim, Defendant requests the award of its attorneys' fees and expenses. Section 1988(b) of Title 42 allows for the award of "a reasonable attorney's fee" to the prevailing party in various kinds of civil rights cases, including suits brought under 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). A prevailing defendant may obtain attorney's fees under § 1988(b) "'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation,'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)), "or that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422. "In applying this standard, courts must balance the policy of encouraging the pursuit of valid civil rights claims against the public interest in discouraging baseless or vindictive lawsuits." *White v. City of Ypsilanti*, 129 F.3d 1266, 1997 WL 705253, at *2 (6th Cir. 1997). "Accordingly, the Supreme Court has cautioned district courts considering prevailing defendants' applications for attorney fees to resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *White, supra* at *2 (citing *Christiansburg,* 434 U.S. at 421–22; *Wayne v. Village of Sebring,* 36 F.3d 517, 530 (6th Cir. 1994)) (internal quotation marks omitted). The Sixth Circuit "has further warned that awarding attorney fees against a losing civil rights plaintiff is an 'extreme sanction, and must be limited to truly egregious cases of misconduct.'" *Id.* (citing *Jones v. Continental Corp.,* 789 F.2d 1225, 1232 (6th Cir. 1986)).

The Court finds that the Plaintiff's claim here does not present the egregious case of misconduct warranting an extreme sanction of attorney's fees to the prevailing defendant. Defendant's request is therefore denied.

### IV. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 4) is **GRANTED.**

**IT IS SO ORDERED.**

\_\_5-10-2017_____
**DATE**

_____
**EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE**